NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

August 21, 2020

David A. Holman, Esq.
Office of the Federal Public Defender
972 Broad St.
Newark, NJ 07102
*Counsel for Defendant*

Elaine K. Lou, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:** *United States v. Eric Esmond*
**Criminal Action No. 18-15 (SDW)**

Counsel:

Before this Court is Defendant Eric Esmond's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). This Court, having considered the parties' submissions and for the reasons discussed below, denies Defendant's motion.

## DISCUSSION

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 824 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).[1]  As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

B.

On January 12, 2018, Defendant pled guilty to a single-count Information, which charged him with firearms possession by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (*See* D.E. 19, 21, 23.)  On June 20, 2018, this Court sentenced Defendant to 41 months of imprisonment and three years of supervised release.  (*See* D.E. 29 at 2-3.)  He is currently serving his sentence at USP Lewisburg ("Lewisburg") in Pennsylvania.  (*See* D.E. 33 at 1.)  Defendant has been serving his sentence since July 25, 2018, and with good time credit, his estimated release date is January 17, 2021.  (D.E. 32 at 2; D.E. 33 at 2.)[2]

Defendant made his administrative request seeking compassionate release to the Federal Bureau of Prisons ("BOP"), which was denied on or about May 11, 2020.  (*See* D.E. 32 at 5; D.E. 32, Ex. E.)[3]  On July 21, 2020, Defendant filed the instant motion, moving for compassionate release under the FSA.  (D.E. 32.)  The Government opposed on July 29, 2020.  (D.E. 33.)  Defendant has not submitted a reply.

C.

Defendant, who is human immunodeficiency virus ("HIV") positive, argues that due to his HIV and chronic back pain, he "suffer[s] from a serious physical or medical condition" that, in the context of the COVID-19 pandemic, "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).  In turn, he argues that he is "especially vulnerable to the deadly risks of COVID-19" at Lewisburg, which he asserts is "ill-equipped to contain the pandemic," (D.E. 32 at 1), and so, extraordinary and compelling reasons justify a reduction in his sentence.

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1(A).

[2] His term would otherwise be set to expire on or about July 20, 2021.  (D.E. 33 at 2.)

[3] The parties do not dispute that Defendant has satisfied the exhaustion requirement, per 18 U.S.C. § 3582(c)(1)(A). (*See* D.E. 33 at 4.)

(*Id.* at 13.) While sympathetic to Defendant's situation, this Court finds that he has not established such "compelling and extraordinary reasons," as required by the FSA, so as to justify release. *See Epstein*, 2020 WL 1808616, at *2; 18 U.S.C. § 3582(c)(1)(A).

Initially, the Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, the Centers for Disease Control and Prevention ("CDC") has categorized which medical conditions (1) increase, or (2) might increase the risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Aug. 19, 2020). The CDC places HIV-positive individuals in the latter category—those who "might be at an increased risk for severe illness from COVID-19." *Id.* It, however, also states that it "believe[s] people with HIV who are on effective HIV treatment have the same risk for COVID-19 as people who do not have HIV." CDC, *What to Know About HIV and COVID-19*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/hiv.html (last accessed Aug. 19, 2020). The CDC additionally notes that risk is "greatest" in those with "a low CD4 cell count" and "not on effective HIV treatment." *Id.*[4]

Defendant did not have COVID-19 as of July 21, 2020, the time of briefing (D.E. 32 at 14), and his HIV appears to be under control. For example, on June 16, 2020, almost two years into his sentence, his HIV was reported as asymptomatic and that he "never had an HIV-related illness." (D.E. 33, Ex. A at 6.) Additionally, his CD4 cell count has risen from 267 cells per cubic millimeter on December 3, 2019, to 343 cells per cubic millimeter in May 18, 2020, suggesting his treatment at Lewisburg has been effective. (D.E. 33, Ex. A at 62, 68.) In this context, Defendant has not established a compelling and extraordinary circumstance justifying release. This is consistent with the findings of other courts. *See United States v. Carter*, Crim. No. 107-076, 2020 WL 4194014, at *2 (S.D. Ga. July 21, 2020) (finding no compelling and extraordinary justification for release where defendant was on HIV medication and had a CD4 count of 488); *United States v. Wright*, Crim. No. 18-5, 2020 WL 4227564, at *1, 3 (W.D. Va. July 22, 2020) (denying compassionate release where defendant's HIV was asymptomatic and she had a "stable" CD4 count); *United States v. Roberts*, Crim. No. 18-528, 2020 WL 1700032, at *1, 3 (S.D.N.Y. Apr. 8, 2020) (finding, in dictum, that HIV-positive defendant detained in prison with several confirmed COVID-19 cases was ineligible for compassionate release).[5]

---

[4] "The CD4 count reflects the white blood cell count in the blood, which plays a key role in the immune system. A healthy immune system normally has a CD4 count ranging from 500 to 1400 cells per cubic millimeter of blood. At levels below 200, a person becomes susceptible to opportunistic infections." *United States v. Carter*, Crim. No. 07-76, 2020 WL 4194014, at *2 n. 4 (S.D. Ga. July 21, 2020) (citing WebMD, *Articles on HIV Testing*, https://www.webmd.com/hiv-aids/cd4-count-what-does-it-mean).

[5] This Court recognizes that (1) Lewisburg, as of August 19, 2020, has 33 confirmed inmate cases of COVID-19 (*see* Bureau of Prisons, *COVID-19*, available at https://www.bop.gov/coronavirus/ (last accessed August 19, 2020)); and (2) Defendant also complains of chronic back pain. Neither changes this Court's analysis. As noted above, given Defendant's effective HIV treatment, his risk of severe illness does not appear significantly higher. *See Wright*, 2020 WL 4227564 at *1 n. 1 (noting decision to deny compassionate release for defendant with asymptomatic HIV would

3

This Court also considers the factors set out in 18 U.S.C. § 3553(a) when determining whether to grant a sentence reduction.[6] In doing so, this Court notes that Defendant's offense was very serious. Defendant pled guilty to knowingly possessing three firearms, one of which was able to accept a large capacity magazine and one of which had a defaced serial number, and many rounds of ammunition, including hollow-point ammunition. (*See* D.E. 23 at 8-9.) During sentencing, this Court thoroughly considered the § 3553(a) factors, and tailored a sentence reflecting the seriousness of this crime and his personal circumstances. Namely, this Court considered Defendant's HIV positive status and consequently varied downward almost 40% from the lower end of the applicable sentencing guideline range. (D.E. 33 at 1-2, 11.) Though this Court recognizes Defendant has served much of his sentence, it finds further reducing his sentence would not properly "reflect the seriousness of the offense," "afford adequate deterrence to criminal conduct," or "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2).

This Court is sympathetic to Defendant's medical concerns and the fact that, if it worsens, his HIV-positive status potentially puts him at a higher risk of developing health complications. However, Defendant's HIV treatment appears to be effective and speculation at this point about what may or may not occur at some point in the future does not constitute a "compelling and extraordinary" reason for release. Further, Defendant's offense was very serious, and reduction of his sentence would not reflect the severity of his crime. This Court is therefore satisfied that early release is not warranted.

## **CONCLUSION**

Defendant's Motion for Compassionate Release is **DENIED** without prejudice. An appropriate order follows.

                                                        /s/ Susan D. Wigenton
                                         **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties

---

not change even if "at least one, and possibly more, positive cases" of COVID-19 were confirmed at the prison). As to his chronic back pain, it does not directly increase his risk of severe illness from COVID-19, *see* CDC, *People with Certain Medical Conditions*, *supra*, and does not "substantially diminish[]" his ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A); *see also United States v. Hawkins*, Crim. No. 14-106-02, 2020 WL 3259017, at *5 (W.D. Pa. June 16, 2020) (finding no "'extraordinary and compelling reasons' for release" where defendant had, among other things, chronic back pain).

[6] The following § 3553(a) factors are applicable to this Court's analysis:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant . . . .
18 U.S.C. § 3553(a).